IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA, )
)
                          Plaintiff, )
)
        vs.                          )
)
SABIL M. MUJAHID,                    )
)               No. 3:10-cr-0091-HRH
                          Defendant.  )
_____ )

O R D E R

Motion to Vacate Pursuant to 28 U.S.C. § 2255

On November 7, 2016, defendant Sabil M. Mujahid, proceeding pro se, moved to vacate his sentence pursuant to 28 U.S.C. § 2255.[1]  Defendant also filed a motion for appointment of counsel and requested that attorney John Balazs be appointed.[2]  The court originally denied defendant's request to have Mr. Balazs appointed as his counsel,[3] but upon reconsideration, the court appointed Mr. Balazs as defendant's counsel.[4]  Defendant's

---

[1]Docket No. 436.

[2]Docket No. 437.

[3]Docket No. 440.

[4]Docket No. 448.

amended § 2255 motion was filed on September 29, 2017.[5]  Plaintiff's response was filed on

December 13, 2017.[6]  Defendant's reply was filed on April 20, 2018.[7]  On May 18, 2018, the

court requested additional materials from defendant and plaintiff.[8]  Defendant and plaintiff

both submitted additional materials in response to the court's request.[9]

<u>Factual Background</u>

On December 5, 2007, defendant was arrested by the State of Alaska on a controlled

substance charge.[10]  On July 16, 2008, an Information was filed charging defendant with a

controlled substance offense in state court Case No. 3AN-07-13675CR.[11]  Defendant was

arrested and then released on bail.[12]  On September 5, 2008, defendant was arrested by the

State of Alaska on an assault charge and his bail in the controlled substance case was

revoked.[13]  On December 16, 2008, defendant was again released on bail in the controlled

---

[5]Docket No. 459.

[6]Docket No. 465.

[7]Docket No. 479.

[8]Docket No. 482.

[9]Docket Nos. 487, 488 and 490.

[10]Affidavit of Sabil Mujahid at 2, ¶ 3, Docket No. 438; SEALED Revised PreSentence Investigation Report at 22, ¶ 107, Docket No. 336.

[11]SEALED Revised PreSentence Investigation Report at 25, ¶ 107, Docket No. 336.

[12]Mujahid Declaration at 2, ¶¶ 5-6, Docket No. 438.

[13]<u>Id.</u> at 2, ¶ 7.

substance case to a representative of Defendant Monitoring Services (DMS), as a third-party custodian, and was fitted with an ankle monitor.[14]  On February 19, 2009, DMS advised the State's District Attorney Office that defendant had violated the conditions of his release by not being at treatment when scheduled and by making two unscheduled stops on his way to treatment.[15]  A hearing was set in state court for March 5, 2009.[16]

On March 3, 2009, according to defendant, the U.S. Marshal and FBI Agent Jolene Goeden met with the State District Attorney's Office to discuss revoking defendant's bail in the controlled substance case.[17]  Defendant does not explain how he knows about this alleged meeting.

On March 4, 2009, the FBI applied for a warrant to search defendant's car for evidence of violations of 18 U.S.C. § 1952 in connection with a sex trafficking investigation being carried out by the FBI and the Anchorage Police Department (APD).[18]  The application

---

[14]Id. at 2, ¶ 9.

[15]Defendant Monitoring Services Report at 1, Exhibit D, Affidavit of Sabil M. Mujahid, Docket No. 480.

[16]Prosecutor's Application for Bail Review Hearing at 1, Exhibit C, Mujahid Affidavit, Docket No. 480.

[17]Mujahid Affidavit at 3, ¶ 10, Docket No. 438.

[18]Docket No. 1 in SEALED Case No. 3:09-mj-0032.  Defendant was eventually indicted in the sex trafficking case on December 9, 2009.  Docket No. 82 in Case No. 3:09-cr-0053-TMB.  These charges were dismissed without prejudice on October 6, 2011.  Docket No. 780 in Case No. 3:09-cr-0053-TMB.

was supported by the affidavit of FBI Agent Goeden.[19]  A federal search warrant was issued

that same day, March 4, 2009.[20]

On March 5, 2009, the APD Vice Unit was assisting federal officers with the federal

search warrant.[21]  At approximately 1:20 p.m. that day, APD Detective Allen Adair observed

defendant retrieve "a small white plastic grocery type bag" from a storage locker at

defendant's apartment complex and put the bag in the trunk of his car.[22]  Adair observed

defendant drive away from the apartment complex about 15 minutes later.[23]

At approximately 1:50 p.m. on March 5, 2009, APD Detective Vondolteren observed

defendant arrive at the state court house.[24]  Vondolteren followed defendant into the state

court house,[25] where defendant had a bail hearing scheduled for 2 p.m.[26]  At the hearing, the

---

[19]Attachment A to Docket No. 1 in SEALED Case No. 3:09-mj-0032.

[20]Docket No. 4 in SEALED Case No. 3:09-mj-0032.

[21]Adair Incident Report at 1, Exhibit A, Declaration of Allen Adair [etc.], Docket No. 466.

[22]Id.

[23]Id. at 2.

[24]Vondolteren Incident Report at 1, Exhibit I, Declaration of Counsel John Balazs, Docket No. 481.

[25]Id.

[26]Mujahid Declaration at 3, ¶ 11, Docket No. 438.

state court judge did not revoke defendant's bail and release but warned him that if there were any further violations, he would be returned to jail.[27]

Around 3 p.m., as defendant was leaving the state courtroom where his bail hearing had been held, FBI Agent Goeden informed him that a search of his apartment and car were underway.[28]

At approximately 3:30 p.m., FBI Agent Goeden notified Detective Adair that a hand gun had been found in defendant's car.[29]

After defendant left the state courthouse on March 5, 2009, he cut off his ankle monitor.[30] DMS became aware that defendant had removed his ankle monitor around 3:50 p.m. when defendant told the DMS representative who had been in attendance at the state court bail hearing that "[y]our stuff's around the corner."[31] DMS advised the state prosecutor, APD, and FBI Agent Goeden that defendant had removed his ankle monitor.[32]

---

[27]Id. at ¶ 12; Testimony of Thomas Faison at 32:1-4, Exhibit A to Amended § 2255 Motion, Docket No. 459.

[28]Mujahid Declaration at 3, ¶ 13, Docket No. 438.

[29]Adair Incident Report at 2, Exhibit A, Adair Declaration, Docket No. 465.

[30]Mujahid Declaration at 3, ¶ 14, Docket No. 438.

[31]Thomas Faison Testimony at 37:4-10, Exhibit A to Amended § 2255 Motion, Docket No. 459.

[32]Mujahid Declaration at 3, ¶ 15, Docket No. 438.

At approximately 4:00 p.m., Detective Adair learned that defendant had "removed his global positioning system ankle monitor and it appeared he was attempting to flee."[33]

At some point, Detective Vondolteren was also advised that defendant had removed his ankle monitor, and Detective Vondolteren, along with Detective Barbosa, was dispatched to help search for defendant.[34] Detectives Vondolteren and Barbosa, who occupied the same vehicle, arrived at defendant's residence where they "received approval from Sgt. Lacey . . . to arrest [defendant] as the APD Special Assignment Unit was currently unavailable."[35] "The arrest team was composed of Det. Barbosa, S/A Goeden and [Vondolteren,] who occupied the same vehicle, and Det. Kleinsmith and Det. McKinnon, who occupied the same vehicle."[36]

Around 6:30 p.m., on March 5, 2009, Vondolteren, Barbosa, and Goeden located the pickup truck in which defendant was riding.[37] "Members of the [APD] Vice Unit" began "surveilling [defendant], until a marked police vehicle was available to conduct a traffic

---

[33]Adair Incident Report at 2, Exhibit A, Adair Declaration, Docket No. 466.

[34]Vondolteren Incident Report at 1-2, Exhibit I, Balazs Declaration, Docket No. 481.

[35]Id. at 2.

[36]Id.

[37]Id.

stop."[38] APD "planned to conduct a probable cause arrest with Special Agent GOEDEN for [defendant's] possession of a firearm five hours earlier."[39]

Defendant avers that "while [he] was on the run, [an] Anchorage Police Department squ[a]d car with it's [sic] amber lights made a traffic stop" and that two other APD cars assisted with the stop.[40]   Detective Adair wrote in his incident report that he

> joined the surveillance in the vicinity of 36th Avenue and Seward Highway.  At the intersection of Fireweed and Seward, I observed a patrol car directly behind the truck [defendant] was riding in.  I pulled my vehicle in front of the pickup truck as we approached the intersection of 15th and Ingra.  The patrol officer activated his emergency lights and I stopped my vehicle in front of the truck to assist with the arrest.[41]

The patrol officer in question was Officer Gould.[42]   After the pickup truck stopped, "Det. Kleinsmith and Det. McKinnon approach[ed] the front driver side of the vehicle and stop[ped] near the hood.  Both had their weapons drawn."[43]   Vondolteren approached the passenger side door and

> as [defendant's] hands moved towards his torso, I placed my service weapon against his head with my index finger against

---

[38]Adair Incident Report at 2, Exhibit A, Adair Declaration, Docket No. 466.

[39]Id.

[40]Mujahid Declaration at 4, ¶ 16, Docket No. 438.

[41]Adair Incident Report at 2, Exhibit A, Adair Declaration, Docket No. 466.

[42]Vondolteren Incident Report at 2, Exhibit I, Balazs Declaration, Docket No. 481.

[43]Id.

the slide, identified myself as a police officer and ordered him to place his hands on the dash. [Defendant] immediately complied. [He] exited the vehicle at my direction and was handcuffed by Det. Barbosa.[44]

Defendant however avers that Detective Adair along with "Detective John Kleinsmith open[ed] the [passenger] side of the car door and arrested [him] for the bail violation."[45] Defendant avers that FBI Agent Goeden arrived while his arrest was in progress.[46] Defendant avers that he was already in handcuffs by the time FBI Agent Goeden arrived on the scene and that he "was not arrested by any federal agents."[47]

After his arrest, defendant was transported to the FBI District Office by FBI Agent Goeden and APD Detectives Adair and Barbosa.[48] Defendant was "subsequently remanded" to the Anchorage Correctional Complex.[49]

At some point in the evening of March 5, 2009, FBI Agent Goeden signed a Form USM-41.[50] "A Form USM-41 is a Prisoner Remand or Order to Deliver And Receipt for

---

[44]Id.

[45]Mujahid Declaration at 4, ¶ 17, Docket No. 438.

[46]Mujahid Declaration at 4, ¶ 18, Docket No. 438.

[47]Id. at 4, ¶¶ 18-19.

[48]Adair Incident Report at 2, Exhibit A, Adair Declaration, Docket No. 466.

[49]Id.

[50]Exhibit A, Declaration of Rochelle Liedike Regarding the Form USM-41 [etc.], Docket No. 468.

United States Prisoners."[51]  A Form USM-41 is used by Deputy Marshals and "Federal Case Agents to 'Remand,' or place an individual in federal custody."[52]  The March 5, 2009 Form USM-41 was addressed to "DOC" and provided that "THE FOLLOWING NAMED UNITED STATES PRISONER(S): Sabil Mujahid 3/12/1957" was "herewith remanded to your custody[.]"[53]  The March 5, 2009 Form USM-41 further provided that "THE ABOVE NAMED UNITED STATES PRISONER(S) WERE RECEIVED: BY" Phillips, COII.[54] There is a time of "2030 hrs" handwritten on the Form USM-41 that appears to have been written by Phillips.[55]

The Alaska Department of Corrections' database is referred to as ACOMS.[56] ACOMS contains a Location History Listing for each inmate.  The Location History Listing is "a log indicating location descriptions, housing locations/status, and beginning/ending dates. . . ."[57]  Defendant's Location History Listing shows that on March 5, 2009, defendant

---

[51]Liedike Form USM-41 Declaration at 2, ¶ 2, Docket No. 468.

[52]Id.

[53]Form USM-41, Exhibit A, Liedike Form USM-41 Declaration, Docket No. 468.

[54]Id.

[55]Id.

[56]Declaration of Rochelle Liedike Regarding ACOMS Location History & Legal Status Listing [etc.] at 2, ¶ 2, Docket No. 469.

[57]Id. at 2, ¶ 4.

was in the Anchorage Jail on "Hold-US Marshal."[58] Defendant contends that this means that

the U.S. Marshals had put a hold or "detainer" on him so he would not be released from state

custody on bail. Rochelle Liedike, a Deputy U.S. Marshal-Criminal Investigator, avers that

this entry indicates defendant's "remand into federal custody. . . ."[59] ACOMS also contains

a Legal Status Listing for each inmate. Defendant's Legal Status Listing indicates that he

was a "federal inmate" from March 5, 2009 through June 28, 2010.[60]

The Marshals Service maintains a Form USM-129 Individual Custody/Detention

Report on each federal inmate. "A Form USM-129, among other details, will include an

inmate's name, alias, identifiers, cautions, TB clearances, DNA testing, detainers lodged and

received, custody/court information and housing locations."[61] Defendant's Form USM-129

shows that his custody status from March 5, 2009 until December 21, 2009 was "WT-CASE-

RESOLVE."[62] Liedike avers that "[t]his means [defendant] was arrested on 3/5/2009 and

in federal custody waiting for his case to resolve."[63]

---

[58]Exhibit B to Amended 2255 Petition, Docket No. 459.

[59]Liedike ACOMS Declaration at 2, ¶ 4, Docket No. 469.

[60]Exhibit B, Liedike ACOMS Declaration, Docket No. 469.

[61]Declaration of Rochelle Liedike regarding Form USM-129 [etc.] at 2, ¶ 3, Docket No. 470.

[62]Form USM-129, Exhibit A at 8, Liedike Form USM-129 Declaration, Docket No. 470.

[63]Liedike Form USM-129 Declaration at 3, ¶ 5, Docket No. 470.

On March 6, 2009, a Notice of Arrest was filed in federal court indicating that defendant had been arrested on March 5, 2009. Shortly thereafter, a criminal complaint was filed in federal court, charging defendant with being a felon in possession of a firearm and ammunition.[64] The criminal complaint was supported by the affidavit of FBI Agent Goeden.[65] Goeden averred that she had participated in the search of defendant's car on March 5, 2009, during which a loaded firearm and ammunition were found in the trunk.[66]

Defendant was taken to federal court for an initial appearance on March 6, 2009.[67] A detention hearing was set for March 11, 2009,[68] at which FBI Agent Goeden testified.[69] The court found probable cause and ordered defendant held on the charge pending trial.[70] Defendant notes that he was taken to federal court on March 6, 2009, "without a writ of habeas corpus ad prosequendum or consent of the State of Alaska."[71]

---

[64]Docket No. 1 in 3:09-cr-0034-TMB.

[65]Attachment A, Criminal Complaint, Docket No. 1. in Case No. 3:09-cr-0034-TMB.

[66]Id. at 1.

[67]Docket No. 5 in Case No. 3:09-cr-0034-TMB.

[68]Docket No. 7 in Case No. 3:09-cr-0034-TMB.

[69]Docket No. 9 in Case No. 3:09-cr-0034-TMB.

[70]Id.

[71]Memorandum of Points and Authorities in Support of Amended Motion to Vacate Under 28 U.S.C. § 2255 at 4, Docket No. 460.

On March 9, 2009, Annette P. Colby, with Fred's Bail Bonding, filed an affidavit to revoke and exonerate bond in defendant's state court controlled substance case, Case No. 3AN-07-13675CR.[72] Colby averred that defendant "was out of custody on electronic monitoring on this case. During the evening of 3/5/09 he ran from the Defendant Monitoring Service's representative. He was taken into custody and is under a federal hold at this time."[73]

On March 13, 2009, the state court revoked defendant's bond.[74] The state court issued a temporary order that defendant was to be held in custody, pending further action or the posting of a $5000 cash performance bond and the appointment of a new third-party custodian.[75] Defendant's next state court appearance was set for March 23, 2009.[76]

On March 18, 2009, defendant was indicted by a federal grand jury on one count of being a felon in possession of a firearm and ammunition.[77]

---

[72]Affidavit to Revoke and Exonerate Bond, Exhibit A at 1, Response in Opposition to Defendant Sabil Mujahid's Motion under 28 U.S.C. § 2255, Docket No. 465.

[73]Id.

[74]Expedited Request, Exhibit A at 2, Response in Opposition to Defendant Sabil Mujahid's Motion under 28 U.S.C. § 2255, Docket No. 465.

[75]Temporary Order at 1, Exhibit E, Mujahid Affidavit, Docket No. 480.

[76]Id.

[77]Docket No. 15 in Case No. 3:09-cr-0034-TMB.

On March 23, 2009, the state court issued another temporary order that defendant was to be held in custody, pending further action by the court or the posting of a $5000 cash performance bond and the appointment of a new third-party custodian.[78] Defendant's state court arraignment was set for March 25, 2009 at 1:45 p.m.[79] There is no evidence in the record as to whether the arraignment ever took place. Defendant avers that he represented himself at all of his state court proceedings after March 5, 2009.[80] State court records, however, show that defendant was represented by the public defender agency in March 2009.[81] Defendant also avers that he never requested a state bail hearing after he was arrested on March 5, 2009.[82] Defendant further avers that he "requested the State Prosecutor . . . to waive the state's jurisdiction by dismissing the drug case, so [he] could proceed with the federal cases" but that "[t]he prosecutor refussed [sic] in open court."[83]

On June 18, 2009, a federal jury found defendant guilty of being a felon in possession of a firearm and ammunition.[84]

---

[78]Temporary Order at 1, Exhibit F, Mujahid Affidavit, Docket No. 480.

[79]Id.

[80]Mujahid Affidavit at 1, ¶ 1, Docket No. 480.

[81]Temporary Order at 1, Exhibit E; Temporary Order at 1, Exhibit F; Mujahid Affidavit, Docket No. 480.

[82]Mujahid Declaration at 1, ¶ 2, Docket No. 480.

[83]Id. at 2, ¶ 4.

[84]Docket No. 64 in Case No. 3:09-cr-0034-TMB.

On June 23, 2009, the State of Alaska issued a detainer.[85]  Liedike avers that "[t]he USMS would only receive a detainer on an inmate if that inmate were in federal primary custody at the time."[86]

Defendant's Form USM-129 Custody/Detention Records reflects a custody status change on December 21, 2009.[87]  On that date, defendant's custody status is listed as "RL-Writ" and the remark accompanying this status change reads:  "Fed Primary/RL - Writ SOA[.]"[88]  Liedike avers that "[t]his entry means that [defendant] was a federal inmate that the State of Alaska was b[o]rrowing on Writ for his state case. . . ."[89]  Defendant's custody remained at this status until June 28, 2010.[90]

On March 18, 2010, defendant was sentenced by a federal judge to 126 months on the felon in possession charge.[91]

---

[85]Form USM-129, Exhibit A at 2, Liedike Form USM-129 Declaration, Docket No. 470.

[86]Liedike Form USM-129 Declaration at 2, ¶ 4, Docket No. 470.

[87]Form USM-129, Exhibit A at 8, Liedike Form USM-129 Declaration, Docket No. 470.

[88]Id.

[89]Liedike Form USM-129 Declaration at 3, ¶ 6, Docket No. 470.

[90]Id.

[91]Docket No. 106 in Case No. 3:09-cr-0034-TMB.

On June 22, 2010, the State of Alaska dismissed the controlled substance charge for which defendant had been arrested in 2008.[92] Defendant contends that he made more than thirteen appearances in state court in connection with the controlled substance charge from March 5, 2009 until the case was dismissed in June 2010.

Defendant avers that on June 23, 2010, he had a re-classification hearing based on a "Remand Detainer" and "Memorandum" filed by an Assistant U.S. Attorney.[93] There is no other evidence in the record that suggests that defendant had a re-classification hearing on June 23, 2010. Department of Corrections records show that defendant was placed in administrative segregation on May 27, 2010.[94] On June 4, 2010, defendant was notified that a classification hearing would be held on June 8, 2010.[95] Department of Corrections records show that on June 8, 2010, the segregation committee recommended that defendant "remain in segregation" and that "the U.S. Marshal request for him to be in segregation."[96]

---

[92]Dismissal at 1, Exhibit G, Mujahid Declaration, Docket No. 480.

[93]Mujahid Declaration at 3-4, ¶¶ 13-15, Docket No. 480.

[94]Administrative Segregation Admission at DOC 08099, attached to Amended Response to Court Order [etc.], Docket No. 488.

[95]Notice of Appearance at DOC 08097-98, attached to Amended Response to Court Order [etc.], Docket No. 488.

[96]Administrative Segregation Classification Form at DOC 08905, attached to Amended Response to Court Order [etc.], Docket No. 488.

Defendant's next review of his classification was set for July 8, 2010,[97] but there is no evidence in the record that this review ever occurred. Liedike avers that the Marshals Service does not have "a document entitled "Remand Detainer[]'" nor does the Marshals Service have an associated "Memorandum" in its files for defendant.[98]

On June 28, 2010, defendant's Location History Listing shows "rls to federal."[99] Liedike avers that "[t]his is the common entry by DOC when the USMS transports a federal inmate to the Bureau of Prisons (BOP) for federal housing and the DOC is discharging the inmate from their facility."[100] Liedike avers that "[t]he USMS did transport [defendant] to SeaTac FDC (a federal facility of the BOP) on 6/28/2010."[101]

On September 23, 2010, defendant was indicted on twelve counts of sexual abuse, aggravated sexual abuse, and abusive sexual contact.[102] Defendant was alleged to have sexually assaulted three other inmates while incarcerated at the Anchorage Correctional Complex. On April 19, 2011, a Second Superseding Indictment was filed adding charges

---

[97]Id.

[98]Declaration of Rochelle Liedike re "Remand Detainer" [etc.], at 2, ¶¶ 2-3, Docket No. 490.

[99]Exhibit B to Amended § 2255 Petition, Docket No. 459.

[100]Liedike ACOMS Declaration at 3, ¶ 7, Docket No. 469.

[101]Id.

[102]Docket No. 1.

involving three additional inmates.[103]  The sexual assaults were alleged to have occurred

between May 2009 and May 2010.

On November 12, 2010, defendant filed a motion to dismiss the indictment on the

ground that the federal criminal statutes that were the basis for the charges on which he had

been indicted were enacted beyond the federal government's limited, enumerated

Constitutional powers.[104]  This motion was denied.[105]  The court later approved the parties'

stipulation that the motion to dismiss, further briefings, and the court's order denying the

motion to dismiss be deemed to apply to all charges in the Second Superseding Indictment

as well.[106]

Defendant's trial in the sexual abuse case began on June 20, 2011.[107]  At trial, Liedike

testified that there are no federal facilities in Alaska to house federal prisoners and so the

Marshals Service contracts for bed space with the State of Alaska's Department of

Corrections.[108]  Liedike testified that the contract covered several Department of Corrections

facilities throughout Alaska but that the majority of federal prisoners are housed in "the

---

[103]Docket No. 218.

[104]Docket No. 24.

[105]Docket No. 108.

[106]Docket No. 246.

[107]Docket No. 287.

[108]Trial Transcript (Day 2) at 24:9-16, Docket No. 365.

Anchorage Correctional Complex East and West buildings."[109]  Liedike testified that the Anchorage Correctional Complex houses "federal, state, and local inmates" and that inmates are pretrial detainees as well as persons who have already been convicted and sentenced.[110] Liedike testified that the assaults had occurred in the Anchorage Correctional Complex East in three different mods, Delta, Echo, and Bravo.[111]

At the conclusion of plaintiff's case-in-chief, the court granted defendant's motion for judgment of acquittal on Counts 7 and 14.[112]  On June 29, 2011, a jury found defendant guilty on Counts 5, 6, 8, 9, 10, 11, 12, 16, 17, 18, 19, and 20 and not guilty on Count 5.[113]  The jury was unable to reach a verdict as to Counts 1-4 and the court declared a mistrial as to those counts.  Counts 1-4 and 13[114] were eventually dismissed with prejudice and Counts 10 and 12 were also dismissed due to a fault in the verdict forms.[115]

After the trial, plaintiff moved for a finding on the record that the Anchorage Correctional Complex is a facility in which persons are held in custody pursuant to a contract

---

[109]Id. at 27:9-15.

[110]Id. at 27:18-22.

[111]Id. at 28:25-29:4.

[112]Docket No. 302.

[113]Docket No. 311.

[114]Count 13 had been severed and was to be tried separately after trial on the other counts was completed due to a defense counsel conflict.  Docket No. 220.

[115]Docket Nos. 315 and 318.

with a federal agency.[116]  The court "conclud[ed] that, as a matter of law, the Anchorage Correctional Complex is a facility in which persons are held in custody pursuant to an agreement with the United States Marshals Service, a federal agency."[117]

On September 15, 2011, defendant was sentenced to 480 months on Counts 5, 9, 17, and 19;[118] 36 months on Counts 8 and 16; and 120 months on Count 11, to run concurrent to each other.[119]

On September 29, 2011, defendant filed a Notice of Appeal.[120]

On January 12, 2012, defendant filed a pro se motion for a new trial,[121] in which he "argued that the government withheld evidence, namely, a memorandum letter and remand detainer that 'could have showed that comity was with the State of Alaska at the time of the allege[d] assault on John Doe 3 and John Doe 6.'" United States. v. Mujahid, 799 F.3d 1228, 1232 (9th Cir. 2015).  On February 10, 2010, the court denied defendant's motion for a new

---

[116]Docket No. 316.

[117]Docket No. 320 at 2.

[118]Counts 5 and 6; Counts 17 and 18; and Counts 19 and 20 were considered three pairs of counts and the parties agreed that each pair constituted a single offense.  Docket No. 311.  As a result, Counts 6, 18, and 20 were dismissed.  Docket No. 346.

[119]Docket Nos. 345 and 350.

[120]Docket No. 352.

[121]Docket No. 391.

trial on the ground that it lacked jurisdiction because defendant had already appealed the judgment of conviction.[122]

On February 22, 2012, defendant filed a second Notice of Appeal.[123]

Defendant's appeals were consolidated. On appeal, defendant argued that this court should have dismissed "the indictment because the statutes of conviction are unconstitutional" and "that whether the Anchorage Correctional Complex is a facility in which persons are held pursuant to a contract with the head of a federal agency is a question of fact that should have been determined by the jury, not the trial judge." Id. at 1232. The Ninth Circuit held that the statutes of convictions were not facially unconstitutional. Id. at 1235. The court explained that "the statutes are not so overbroad as to completely exceed Congress' power under the Necessary and Proper Clause" of the U.S. Constitution. Id. The Ninth Circuit declined to consider defendant's as-applied challenge to the statutes of conviction because the record was not fully developed on that issue and this court had not ruled on the issue. Id. at 1236. The Ninth Circuit noted that "[t]he district court remains free to reconsider this issue upon an appropriate motion." Id. at 1236 n.10. Finally, the Ninth Circuit held that "the district court may determine as a matter of law whether the facility at which the alleged crime took place is one 'in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency.'" Id. at 1238.

---

[122]Docket No. 400.

[123]Docket No. 402.

On October 3, 2016, defendant's petition for certiorari was denied, and defendant's § 2255 motion followed on November 17, 2016.

In his amended § 2255 motion, defendant asserts four grounds for relief. In Claim One, defendant asserts that the statutes of conviction are unconstitutional as applied to him. In Claim Two, defendant asserts that plaintiff violated the principle of comity in prosecuting him for offenses that occurred while he was in state custody. In Claim Three, defendant asserts that plaintiff withheld material, exculpatory evidence showing that he was a state inmate between May 2009 and May 2010. In Claim Four, defendant asserts that his trial counsel rendered ineffective assistance because he did not raise an as-applied challenge to the statutes of conviction and because he did not attempt to obtain certain documents which defendant contends would show that he was a state prisoner during the relevant time.

## Standard of Review

Section 2255(a) of Title 28 of the United States Code provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"When a district court reviews a § 2255 habeas motion, '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and

conclusions of law with respect thereto.'" <u>United States v. Withers</u>, 638 F.3d 1055, 1062 (9th Cir. 2011) (quoting 28 U.S.C. § 2255(b)). "In determining whether a hearing and findings of fact and conclusions of law are required, '[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted.'" <u>Id.</u> (quoting <u>United States v. Schaflander</u>, 743 F.2d 714, 717 (9th Cir. 1984)). "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" <u>Id.</u> at 1062-63 (quoting <u>Schaflander</u>, 743 F.2d at 717). "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts." <u>Shah v. United States</u>, 878 F.2d 1156, 1159 (9th Cir. 1989) (citation omitted).

<u>Claim One</u>

In his first claim, defendant argues that his conviction should be vacated because the statutes of conviction are unconstitutional as applied to him. Defendant was convicted of violations of 18 U.S.C. §§ 2241, 2242, and 2244. The statutes of conviction apply to sexual offenses committed "'in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General.'" <u>Mujahid</u>, 799 F.3d at 1233 (quoting Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109–162, § 1177(a), 119 Stat. 2960, 3125 (2006)

(codified as amended at 18 U.S.C. §§ 2241–2244)).  For purposes of these statues, "the term 'prison' means a correctional, detention, or penal facility[.]"  18 U.S.C. § 2246(1). Defendant argues that the statutes of conviction are unconstitutional as applied to him because the federal government lacks the power to criminalize sexual assaults by a state inmate against other state inmates[124] in a local jail.

The Ninth Circuit has held that "18 U.S.C. §§ 2241, 2242, and 2244 are plainly constitutional as applied to an individual in <u>federal</u> custody who is being held in a state facility pursuant to a contract with a federal agency."  <u>Mujahid</u>, 799 F.3d at 1236.  Thus, if defendant were in federal custody at the time of the sexual assaults, the statutes of conviction would be constitutional as applied to him.  However, defendant contends that he was in state custody and under the primary jurisdiction of the State of Alaska from March 5, 2009 until on or about June 28, 2010, which encompasses the time period during which the sexual assaults occurred (May 2009 through May 2010).

 "'The term "primary jurisdiction" . . . refers to the determination of priority of custody . . . between state and federal sovereigns.'"  <u>Johnson v. Gill</u>, 883 F.3d 756, 759 n.1 (9th Cir. 2018) (quoting <u>Taylor v. Reno</u>, 164 F.3d 440, 444 n.1 (9th Cir. 1998)).  "As a general rule, the first sovereign to arrest a defendant has priority of jurisdiction for trial, sentencing, and incarceration."  <u>Thomas v. Brewer</u>, 923 F.2d 1361, 1365 (9th Cir. 1991).

---

[124]There is no dispute that the victims of the sexual assaults for which defendant was convicted were state inmates.

"Although 'custody' can mean mere physical possession or control of a person, it may also refer to lawful authority over a person." Johnson, 883 F.3d at 761.

Defendant argues that the evidence shows that the State of Alaska had primary jurisdiction from March 5, 2009 until June 28, 2010. This argument is based on defendant's contention that on March 5, 2009, he was arrested by APD officers, not federal officers, for violating his bail conditions in the state controlled substance case.[125]

While there is some dispute as to which APD officers were involved in defendant's arrest and as to whether FBI Agent Goeden was present when defendant was taken out of the truck and put in handcuffs, there is no dispute that it was APD officers who removed defendant from the truck in which was he riding and who handcuffed him. But, that does not necessarily mean that the State of Alaska had primary jurisdiction of defendant during the relevant time (May 2009 through May 2010).

Although defendant avers that he was arrested for violating of his state bail conditions, when viewed against the record, this averment is not credible. The evidence in the record establishes that defendant was arrested on federal charges and placed in federal custody on the night of March 5, 2009.

Adair's incident report indicates that APD "planned to conduct a probable cause arrest with Special Agent GOEDEN for [defendant's] possession of a firearm five hours earlier."[126]

---

[125]Mujahid Declaration at 4, ¶ 17, Docket No. 438.

[126]Adair Incident Report at 2, Adair Declaration, Docket No. 466.

Detective Vondolteren's report is not to the contrary, as defendant contends. In his report, Detective Vondolteren indicated that APD officers "received approval from Sgt. Lacey . . . to arrest [defendant] as the APD Special Assignment Unit was currently unavailable."[127] Defendant argues that this notation indicates that APD was going to arrest him for violating his bail conditions, but that is not what Vondolteren's report says. The only reference in Vondolteren's report as to defendant's bail conditions is a notation that "Sgt. Lacey advised me that [defendant] had removed his ankle monitoring device and fled the immediate area" and a reference to defendant's "recent actions removing his electronic monitoring device[.]"[128] While these notations establish that Vondolteren knew that defendant had cut off his electronic monitoring device, they do not suggest that APD's intent was to arrest defendant for violating his bail conditions. Moreover, Vondolteren and Barbosa were given approval to arrest defendant while speaking with Sgt. Lacey at defendant's apartment complex, where a search pursuant to a federal search warrant was being conducted.[129] This supports Adair's statement that APD intended to arrest defendant because of the results of the federal search, rather than because he had removed his ankle monitor. When viewed as a whole, the actions of the APD officers on March 5, 2009, were focused on the investigation of defendant for possible violations of federal sex trafficking laws and the federal search

---

[127]Vondolteren Incident Report at 2, Exhibit I, Balazs Declaration, Docket No. 481.

[128]Id. at 1-2.

[129]Id. at 2.

warrant that was issued as a result of that investigation. The credible evidence in the record establishes that APD intended to arrest defendant on federal charges, rather than state charges, on the night of March 5, 2009.

But even assuming that the State of Alaska acquired primary jurisdiction of defendant at the moment of his arrest, that primary jurisdiction was relinquished almost immediately. A sovereign can relinquish primary jurisdiction by turning an arrestee over to another sovereign. Smith v. Williams, Case No. CV 13–7722–VAP (JPR), 2014 WL 3055900, at *3 (C.D. Cal. July 3, 2014). The evidence in the record establishes that APD turned defendant over to federal authorities almost immediately after his arrest and that the federal government had primary jurisdiction from that time forward.

After defendant was taken into custody by the APD officers, he was transported to a federal facility, namely the FBI District Office, for questioning. The Form USM-41 that FBI Agent Goeden filled out the evening of March 5, 2009, listed defendant as a federal prisoner who was being remanded to the Anchorage Correctional Complex.[130] And, the ACOMS Legal Status Listing for defendant indicates that he was a "federal inmate" from March 5, 2009 through June 28, 2010.[131] This is the most telling evidence as to which sovereign had primary jurisdiction of defendant after his arrest on the evening of March 5, 2009. This evidence plainly establishes that by the time defendant was taken to the Anchorage

---

[130]Form USM-41, Exhibit A, Liedike Form USM-41 Declaration, Docket No. 468.

[131]Exhibit B, Liedike ACOMS Declaration, Docket No. 469.

Correctional Complex on the evening of March 5, 2009, defendant was a federal prisoner, in the control and custody of the federal government.

Defendant's Location History Listing is also evidence that defendant was a federal prisoner, and not a state prisoner, when he was brought to the Anchorage Correctional Complex on the evening of March 5, 2009. The Location History Listing indicates that on March 5, 2009, defendant was in the Anchorage Correctional Complex on "Hold-US-Marshal,"[132] which Liedike avers meant that defendant was "remand[ed] into federal custody. . . ."[133]

Although defendant contends that this entry meant that the federal government was putting a detainer on him, defendant offers no evidence to support this contention. Defendant seems to suggest that the affidavit to revoke and exonerate his bond in state court is such evidence. As set out above, that affidavit stated that defendant had been "taken into custody and is under a federal hold at this time."[134] But this affidavit only repeats the information that was in defendant's Location History Listing. It does not indicate that a federal detainer had been placed on defendant.

Other evidence also indicates that the federal government acquired primary jurisdiction almost immediately after defendant was arrested by APD officers on March 5,

---

[132]Exhibit B to Amended § 2255 Petition, Docket No. 459.

[133]Liedike ACOMS Declaration at 2, ¶ 4, Docket No. 469.

[134]Affidavit to Revoke and Exonerate Bond, Exhibit A at 1, Response in Opposition to Defendant Sabil Mujahid's Motion under 28 U.S.C. § 2255, Docket No. 465.

2009.  Defendant made his initial appearance in federal court and was ordered detained for trial before his scheduled arraignment in state court for violating his bail conditions in the state controlled substance case.  Although defendant avers that he made numerous appearances in state court during the relevant time, he did so pursuant to a detainer the State of Alaska filed with the Marshals Service on June 23, 2009.[135]  As Liedike avers, "[t]he USMS would only receive a detainer on an inmate if that inmate were in federal primary custody at the time."[136]  In other words, if defendant had been a state prisoner during the time period of May 2009 through May 2010, as he contends, then there would have been no need for the State of Alaska to file a detainer on June 23, 2009.

Further proof that defendant was being "borrowed" by the State of Alaska during the relevant time, as opposed to the State of Alaska having primary jurisdiction, can be found in defendant's Form USM-129.  This form shows that on December 21, 2009, defendant's custody status changed to "RL-Writ" and that this status continued to June 28, 2010.[137]  The remark accompanying this status change reads:  "Fed Primary/RL - Writ SOA[.]"[138]  As

_____

[135]Form USM-129, Exhibit A at 2, Liedike Form USM-129 Declaration, Docket No. 470.

[136]Liedike Form USM-129 Declaration at 2, ¶ 4, Docket No. 470.

[137]Form USM-129, Exhibit A at 8, Liedike Form USM-129 Declaration, Docket No. 470.

[138]Id.

-28-

Liedike avers, "[t]his entry means that [defendant] was a federal inmate that the State of Alaska was b[o]rrowing on Writ for his state case. . . ."[139]

Defendant argues that if the State of Alaska were borrowing him on a writ from December 21, 2009 through June 28, 2010, then the federal government waived or relinquished its primary jurisdiction during this time. "Relinquishment, however, does <u>not</u> occur when one sovereign borrows a prisoner from another sovereign through a writ of habeas corpus." <u>Felix v. United States</u>, Case Nos. 08CV0660, 06CR1948 BTM, 2008 WL 4534044, at *5 (S.D. Cal. Oct. 6, 2008) (citing <u>Taylor</u>, 164 F.3d at 445-46).

Defendant cites to <u>United States v. Collier</u>, Case No. 00-3970, 2002 WL 257211 (6th Cir. Feb. 20, 2002), in support of his argument that he was a state prisoner, and not a federal prisoner, between March 5, 2009 and June 28, 2010. There, on December 13, 1999, the defendant was arrested by officers of a local police department and a United States Deputy Marshal. <u>Id.</u> at *1. "At the time of his arrest, two arrest warrants had been issued for the defendant: a state arrest warrant for parole violation, and [a] federal arrest warrant for bank robbery." <u>Id.</u> After his arrest, the defendant was taken to the county jail, "where he was booked on the state probation violation charge" by the local police department, "though the jail paperwork included a detainer for the federal charge." <u>Id.</u> The next day, the defendant was taken by federal agents to federal court for a hearing. <u>Id.</u> The defendant was taken to federal court several days later for a second hearing. <u>Id.</u> The defendant pled guilty to the

---

[139]Liedike Form USM-129 Declaration at 3, ¶ 6, Docket No. 470.

-29-

federal charges on May 30, 2000 and to the state charges on July 19, 2000.  Id.  The defendant filed a motion in federal district court asking the court to determine that the federal government had primary jurisdiction.  Id.  "At sentencing, the district court ruled orally that primary jurisdiction rested with the state because the defendant was booked as a state prisoner at the time of his arrest."  Id.  On appeal, the Sixth Circuit declined to "decide the legal issue of whether primary jurisdiction . . . was initially state or federal since the United States ha[d] clearly waived primary jurisdiction in Collier's case."  Id. at *2.  The Sixth Circuit found that "[a]t no point during or immediately after the arrest did the United States demonstrate its intention to assert primary jurisdiction over the defendant."  Id.  In particular, the Sixth Circuit noted that "in the opinion of the United States Attorney's office, the defendant is and 'always has been,' a state prisoner."  Id.

Here, much the same is true but in reverse.  In Collier, after the defendant's arrest, the federal government did nothing to indicate that it intended to assert primary jurisdiction over the defendant.  Here, after defendant's arrest, the State of Alaska did nothing to indicate that it intended to assert primary jurisdiction over the defendant.  Rather, the federal government demonstrated its intention to assert primary jurisdiction over defendant immediately after defendant's arrest.  Defendant was transported to a federal facility for questioning prior to being taken to the Anchorage Correctional Complex.  FBI Agent Goeden indicated that defendant was a federal prisoner on the form presented to the Department of Corrections when defendant was brought to the Anchorage Correctional Complex.  Defendant was not

booked on any state charges the evening of his arrest and he appeared in federal court on the federal felon in possession charge before he made any appearances in state court for violating the conditions of his bail in the state controlled substance case. And finally, the United States has taken, and continues to take, the position that defendant was a federal prisoner, not a state prisoner, from March 5, 2009 onward.

In sum, the evidence in the record conclusively establishes that defendant was a federal prisoner under the primary jurisdiction of the federal government during the relevant time period of May 2009 through May 2010. An evidentiary hearing on this issue is thus not required. See United States v. Chacon-Palomares, 208 F.3d 1157, 1159 (9th Cir. 2000) (quoting 28 U.S.C. § 2255) ("[w]hen a prisoner files a § 2255 motion, the district court must grant an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief'"). The only evidence that supports defendant's contention that he was a state prisoner during the relevant time is defendant's averments, averments which are "palpably incredible[,]" in light of the documentary evidence to the contrary. Shah, 878 F.2d at 1158 (citation omitted).

Defendant's § 2255 motion is denied as to Claim One.

Claim Two

Defendant argues that plaintiff violated the principle of comity in prosecuting him for offenses that occurred while he was in state custody. "Determination of priority of custody and service of sentence between state and federal sovereigns is a matter of comity to be resolved by the executive branches of the two sovereigns." United States v. Warren, 610 F.2d 680, 684 (9th Cir. 1980). "Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration." Id. at 684-85. If the State of Alaska had primary jurisdiction from May 2009 through May 2010, then defendant argues that prosecution of him for federal sex offenses violated the principle of comity. As discussed above, however, the evidence in the record conclusively establishes that the federal government had primary jurisdiction during the relevant time.

Defendant's § 2255 motion as to Claim Two is denied.

Claim Three

Defendant argues that the government withheld material, exculpatory evidence showing that he was a state prisoner between May 2009 and May 2010. "In Brady v. Maryland, the Supreme Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" Comstock v. Humphries, 786 F.3d 701, 707 (9th Cir. 2015) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). "Evidence is in possession of the government if it is in

possession of cooperating agencies, or if the prosecutor has knowledge of and access to the documents." United States v. McDavid, Case No. CR S–06–35 MCE, 2007 WL 926664, at *2 (E.D. Cal. March 27, 2007) (internal citations omitted). "Evidence is material if 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Paradis v. Arave, 240 F.3d 1169, 1176 (9th Cir. 2001) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

Defendant first argues that plaintiff withheld a March 5, 2009, detainer. Defendant avers that "jail paperwork" showed that plaintiff filed such a detainer.[140] It is not entirely clear what "jail paperwork" defendant is referring to although at times he makes reference to his Exhibit B, which is the ACOMS Location History Listing. As set out above, the March 5, 2009 entry on the Location History Listing indicates that defendant was in the Anchorage Jail on a "Hold–US-Marshal[.]"[141] As discussed above, defendant contends that this notation meant that the federal government had put a detainer on him so that he could not be released from state custody on bail.

A "detainee" is "a person held in custody, confined, or delayed by an authority, such as law enforcement or a government."[142] Use of the term "detainee" is not informative as

---

[140]Mujahid Declaration at 4, ¶ 20, Docket No. 438.

[141]Exhibit B to Amended § 2255 Motion, Docket No. 459.

[142]Black's Law Dictionary at 513 (9th ed. 2009).

regards the <u>identity</u> of the law enforcement or governmental agency having legal custody of a defendant. The term in question at this point ("Hold–US–Marshal") certainly suggests that defendant was being detained by federal authorities. But the entry in question comes from Anchorage Correctional Complex records, the purpose of which is to record a defendant's physical location, not his legal status.[143] Thus, the "Hold–US–Marshal" entry in defendant's location history list is no evidence of an undisclosed federal detainer. Rather, the evidence of defendant's custodial status is to be found in defendant's Legal Status Listing which indicated that he was a "federal inmate" from March 5, 2009, through June 28, 2010.[144]

Other evidence before the court is consistent with defendant's custodial status being that of a federal prisoner and is consistent with the court's conclusion that there was no undisclosed federal detainer of defendant. First, defendant was removed to and arraigned in federal court on March 6, 2009. There is no evidence of plaintiff having secured a writ of <u>habeas corpus</u> or consent of the state which would have been necessary had defendant been a state prisoner.

Second, on March 5, 2009, as documented by the Form USM–41,[145] defendant was placed in the custody of the Anchorage Correctional Complex by federal authorities. There is no record of the State of Alaska having placed defendant in the Anchorage Correctional

---

[143]Liedike ACOMS Declaration at 3-4, ¶¶ 5, 6 and 10, Docket No. 469.

[144]Exhibit B, Liedike ACOMS Declaration, Docket No. 469.

[145]Form USM–41, Exhibit A, Liedike Form USM–41 Declaration, Docket No. 468.

Complex on March 5, 2009. Moreover, on June 23, 2009, the State of Alaska issued and lodged with the United States Marshal a detainer of defendant with respect to his state charges.[146] The fact that the State of Alaska placed a detainer as to defendant is strong evidence, as established by other records, that defendant was at all times relevant to this case a federal prisoner; and, therefore, there is no reason to believe that there was an undisclosed federal detainer of defendant.

Defendant also argues that plaintiff withheld a June 23, 2010 Remand Detainer and Memorandum. Defendant avers that this document was attached to the notice of a June 23, 2010 special re-classification hearing, the purpose of which was "to have [him] placed in segregation [at] the order[] of Assistan[t] Attorney General Daniel Cooper."[147] Defendant also contends that this document was issued by plaintiff "to have [him] place[d] in federal custody."[148] There is, however, no evidence to support defendant's contention that this document exists.

Defendant has not been able to produce this document, and plaintiff has offered evidence that the June 23, 2010 document to which defendant refers does not exist in the

---

[146]Form USM-129, Exhibit A at 2, Liedike Form USM-129 Declaration, Docket No. 470.

[147]Mujahid Declaration at 3-4, ¶¶ 13, 15, Docket No. 480.

[148]Mujahid Declaration at 5, ¶ 22, Docket No. 438.

Marshals Service's files.[149]  Defendant contends that there was a recorded segregation

hearing on or about June 23, 2010.  By minute order of May 18, 2018, the court requested

that defendant produce a transcript of this hearing or other evidence of such a hearing.[150]

Defendant sought and was granted additional time within which to respond to the court's

request.  Although defendant produced some records from the Department of Corrections in

response to the May 18, 2018 minute order, he did not produce a transcript of the hearing or

any other evidence that a hearing was held on or about June 23, 2010.  Rather, the

Department of Corrections records show that defendant was placed in administrative

segregation on May 27, 2010 and that a segregation hearing was held on June 8, 2010.[151]

These records do not show that segregation of defendant within the Anchorage Correctional

Complex had anything to do with the issue of which sovereign had primary custody of

defendant.

But even if the June 23, 2010, document existed, it would not be material.  Defendant

seems to think that the June 23, 2010, document, if it existed, would be evidence that he was

a state prisoner prior to June 23, 2010.  But given all the evidence in the record that

---

[149]Liedike "Remand Detainer" Declaration at 2, ¶¶ 2-5, Docket No. 490.

[150]Docket No. 482 at 2.

[151]Administrative Segregation Admission at DOC 08099; Administrative Segregation Classification Form at DOC 08905; both attached to <u>Amended</u> Defendant's Response to Court Order [etc.], Docket No. 488.

defendant was a federal prisoner from the evening of March 5, 2009 onward, this document, even if there were some evidence that it existed, would not alter the outcome here.

Defendant has the burden of proving a Brady violation. United States v. Si, 343 F.3d 1116, 1122 (9th Cir. 2003). Defendant has not met his burden.

Defendant's § 2255 motion is denied as to Claim Three.

Claim Four

Defendant argues that his trial counsel rendered ineffective assistance. "To establish ineffective assistance of counsel under Strickland, a prisoner must demonstrate both: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense." Miles v. Ryan, 713 F.3d 477, 486 (9th Cir. 2013). "The first prong of the Strickland test—deficient performance—requires a showing that counsel's performance fell below an objective standard of reasonableness or was outside the wide range of profession-ally competent assistance[.]" Id. (internal citations omitted). "The second prong of the Strickland test—prejudice—requires the petitioner to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." Id. at 486-87 (citation omitted).

Defendant first argues that his trial counsel rendered ineffective assistance by failing to file a motion to dismiss on the ground that the statutes of conviction were unconstitutional as applied to him. As discussed above, the record conclusively establishes that defendant was a federal prisoner between May 2009 and May 2010. Because defendant was a federal

prisoner, the statutes of conviction were constitutionally applied to him. There was no basis for his trial counsel to file the suggested motion to dismiss.

Defendant also argues that his trial counsel rendered ineffective assistance because he failed to obtain evidence of the federal government's March 5, 2009 detainer and the June 23, 2010 "Remand Detainer and Memorandum." Defendant argues that if his trial counsel would have obtained these documents and filed a motion to dismiss based on these documents, it is likely that he would not have been convicted of the federal sex offenses charges. But, as discussed above, if these documents existed, they would not have been material. Thus, there would have been no basis for defendant's trial counsel to attempt to obtain these documents.

Defendant's ineffective assistance of counsel claim fails on the first prong of the Strickland test. Defendant has not shown that his trial counsel's performance was deficient.

Defendant's § 2255 motion is denied as to Claim Four.

Conclusion

After careful consideration of all the evidence submitted by the parties, including defendant's affidavits, the court denies defendant's request for an evidentiary hearing and denies defendant's § 2255 motion.

DATED at Anchorage, Alaska, this 9th day of August, 2018.

/s/ H. Russel Holland
United States District Judge